The People of the State of Illinois, Defendant in Error, v. Ida Dembo Burt, Plaintiff in Error.

Gen. No. 33,940.

Opin-
ion filed April 22, 1930.

Louis H. Dembo, for plaintiff in error.

John A. Swanson, State's Attorney, for defendant
in error; Edward E. Wilson and John Holman, As-
sistant State's Attorneys, of counsel.

Mr. Presiding Justice Barnes delivered the opinion
of the court.

By this writ of error Ida Dembo Burt seeks reversal
of an order entered September 9, 1929, holding her as
having committed a direct contempt of court on July
15, 1929.

From recitals of the order it appears that on the
latter date she was in court as a party defendant to a
civil proceeding, and while in the corridor of the
court room after its close fired a loaded revolver at
the plaintiff in the case, and following him into the
court room while the court was still in session, fired
at him again, and in a menacing attitude toward the
bench and pointing the loaded revolver in the direc-
tion of the judge, and using threatening, profane and
abusive language, again discharged it, the bullet
striking the ceiling above the judge's desk.

Immediately after these happenings, and without the institution of any contempt proceedings she was taken to the psychopathic laboratory and thence to the county court which on July 29, nine days later, found her insane with homicidal tendencies and committed her to the Jacksonville State Hospital for the Insane.

It appears from the record that while she was confined in that institution the judge learning that criminal complaints taken out against her based upon such occurrences were dismissed for want of prosecution the day after she was so adjudicated to be insane, and learning in some way not disclosed in the record that she was "about to be discharged from the asylum," took, as he said, the initiative to have new complaints taken out against her and issued warrants thereon. It further appears that on September 9, she was brought before the court in which said judge was sitting, under arrest upon said warrants, and that the court after transferring the cases to another judge of the court, proceeded to assume jurisdiction of her person without any rule, pleading or process in the matter and summarily entered the order of contempt above referred to.

Before entering said order, apparently to give color to the theory that she had been restored to her rights as a sane person, the court directed that there should appear in the record a certified copy of an order of the county court entered March 20, 1929, which recited that plaintiff in error had been adjudged insane in February, 1914, and on March 20, 1929, was restored to her rights as having fully recovered her reason. Thereupon her counsel apprised the court that this was the first notice her attorney or anyone interested in the case had of any contempt proceedings and asked for an opportunity for her to purge herself, and further apprised the court that she had been again ad-

judicated insane by the county court on July 24, 1929, and committed to said hospital for the insane, a copy of which order was produced, and also a copy of the prior order adjudicating her insane in February, 1914. No order of restoration to the rights and privileges of a sane person since her last commitment was produced, and her counsel said he knew of none and urged that she in the eyes of the law was still an insane person. No one, not even the judge, claimed that any such order had been entered, the judge merely remarking, ''it has been officially communicated to this court that this woman has been discharged from the Jacksonville Insane Asylum.'' It is manifest that whatever personal communication was made to the judge he could not as a court take judicial notice thereof and treat it as evidence in the case. Thereupon, with full knowledge of her previous history and without having acquired jurisdiction of her person through any judicial process to proceed against her for contempt claimed to have been committed nearly two months before that time, and without hearing any evidence whatever as to her legal status then or her state of mind at the time of the alleged contempt, the court proceeded at once summarily without any semblance of a judicial proceeding to sentence her to confinement in jail for six months or until otherwise discharged by law.

No one would question the right of the court to have proceeded as in case of direct contempt at the time of the commission of her acts when she was still in the court's presence, or had such proceedings been then instituted and continued to the time of the court's action. Neither of these proceedings was taken. But, on the contrary, recognizing her probable disordered state of mind, the court permitted her to be taken to proper agencies for investigation as to her sanity. Surely if she was insane at the time of committing said acts the necessary criminal intent for her con-

viction either of a direct contempt or the criminal charges was lacking, and in either case evidence would be heard on the claim of insanity.

But even if she had been regularly brought before the court for a hearing on the contempt charge it is hardly compatible with our sense of justice that the court with knowledge of her previous history should without any evidence as to her mental condition at the time of the alleged contempt, assume that she was sane at that time in spite of a judicial finding nine days later that she was insane and of her commitment to an institution for the insane, thus suggesting that she was insane at the time of such abnormal conduct.

But whatever authority the court might have exercised at the time of the commission of said acts to take jurisdiction of her person and proceed as in a case of direct contempt committed in its presence, it had no right to assume jurisdiction of her person for such purpose on September 9, without any judicial process whereby it could be acquired. The mere fact that she was then brought into the presence of the court on the other criminal cases did not authorize assumption of such jurisdiction. One cannot be deprived of his liberty in this country without due process of law.

*Reversed.*

SCANLAN and GRIDLEY, JJ., concur.